**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EAGLE CRUSHER COMPANY, INC., | : | |
| 525 S. Market St., | : | |
| Galion, Ohio 4833 | : | |
| | : | Case No. 2:25-cv-42 |
| Plaintiff, | : | |
| | : | Judge |
| v. | : | |
| | : | |
| US EQUIPMENT SALES AND RENTALS, | : | |
| 13011 Grant Rd., | : | |
| Lemont, Illinois 60429 | : | **JURY DEMAND ENDORSED HEREON** |
| | : | |
| Defendant. | : | |

**COMPLAINT**

NOW COMES Plaintiff Eagle Crusher Company, Inc. ("Eagle Crusher"), by and through its undersigned counsel, and for its Complaint against Defendant US Equipment Sales and Rentals ("US Equipment"), hereby alleges and avers as follows:

**NATURE OF THE ACTION**

1.      Eagle Crusher brings this action against US Equipment to protect Eagle Crusher's trademarks and goodwill and to recover for US Equipment's refusal to pay for or return an $890,880 machine and several other machine parts that US Equipment ordered and received from Eagle Crusher.

2.      Without authorization, US Equipment continues to hold itself out to the public and customers as an affiliate and authorized dealer of new Eagle Crusher parts and equipment, even though US Equipment distributor agreement with Eagle Crusher expired by its own terms on June 7, 2024.

3. Despite clear contractual provisions and numerous demands by Eagle Crusher, US Equipment continues wrongfully to retain the above-referenced Eagle Crusher machine, despite not having paid anything for it more than eight months after the full payment was due.

4. US Equipment also continues to wrongfully retain various Eagle Crusher parts, despite not having paid for them after full payment was due.

5. As a result of US Equipment's breach of contract, unauthorized use of Eagle Crusher's trademarks, and continuing misconduct, Eagle Crusher seeks compensatory damages, and replevin, along with attorneys' fees, in an amount to be determined at trial.

**PARTIES**

6. Eagle Crusher is an Ohio corporation with its principal place of business at 525 South Market Street, P.O. Box 537, Galion, Ohio 44833.

7. Upon information and belief, US Equipment is an Illinois limited partnership with its principal place of business located at 13011 Grant Road, Lemont, Illinois 60439.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this action pursuant to §§ 1331, 1338, and 1367.

9. This action arises under §§ 1114(1) and 1125(a) of the Lanham Act.

10. Additionally, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the Plaintiff and the Defendant (collectively, "the Parties") are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. The Court has personal jurisdiction over the Parties because the Parties consented to this judicial district by signing and executing a distributor agreement ("Distributor Agreement"). In relevant part, Section 13 of the Distributor Agreement provides that "the parties agree that the Federal and State Courts of Ohio shall have exclusive jurisdiction and venue over any claims and

suits arising under this Agreement or in Connection with Equipment, Parts, or other components supplied by Eagle [Crusher]." Furthermore, Section 10 to Exhibit A of the Distributor Agreement provides that "[t]he parties hereby agree that the state courts located in the County of Crawford, State of Ohio, or the United States District Court for the Southern District of Ohio, Eastern Division, shall have exclusive jurisdiction over any action or suit between the parties. . ."

12.     Venue is proper within this district pursuant to the aforementioned Section 13 of the Distributor Agreement, whereby the Parties agreed that venue is appropriate within this district.

## FACTUAL BACKGROUND

### A.     Eagle Crusher's Business and Trademarks.

13.     Eagle Crusher is a worldwide leader in providing advanced and high-performing impact crushers, portable crushing and screening plants, jaw crushers, cone crushers, hammermills, and conveyers for various industries, including recycle concrete, asphalt, aggregate, and sand and gravel.

14.     Eagle Crusher's operations trace back to 1915, when Eagle Crusher manufactured a "jaw crusher" used to crush stones for building roads. Eagle Crusher became engaged in commerce in 1917.

15.     Eagle Crusher's operations expanded significantly throughout the twentieth century, focusing on the sale of portable crushers and recycling plants.

16.     Eagle Crusher enters into distribution agreements with companies to distribute and sell new Eagle Crusher parts and equipment to end users.

17.     Eagle Crusher owns a valid and subsisting federal trademark registration issued by the United States Patent and Trademark Office for the name EAGLE CRUSHER.  *See*, **Exhibit 1** (U.S. Trademark Registration No. 5400436, hereinafter "the EAGLE CRUSHER Registration").

3

18.     The EAGLE CRUSHER Registration is registered in International Class 007 for use in connection with "[q]uarry, mining and mineral processing machinery for use in size reduction of asphalt, steel-reinforced concrete, stone and construction and demolition debris, namely, crushers, pulverizers, impact breakers, hammermills, disintegrating mills, vibrating and revolving screens and conveyors."

19.     The EAGLE CRUSHER Registration is incontestable pursuant to 15 U.S.C. § 1065.

20.     Eagle Crusher has used its trademarks, including EAGLE CRUSHER and the EAGLE CRUSHER Registration throughout the United States and elsewhere, including in Ohio, for approximately seven years.

21.     Eagle Crusher enjoys a valuable reputation and goodwill among its customers as a provider of high-quality crushing plants and equipment. Eagle Crusher's trademarks have come to be recognized and associated by Eagle Crusher's customers exclusively with the crushing plants and related parts and equipment provided by Eagle Crusher. Eagle Crusher's products are widely sought by customers and distributors around the world and in Ohio because of Eagle Crusher's excellent reputation.

22.     Eagle Crusher's trademarks are a valuable business and marketing asset of Eagle Crusher and indicate to customers and distributors the high-quality products originating only from Eagle Crusher.  Eagle Crusher has expended substantial time, effort, and money in manufacturing, advertising, promoting, and marketing its products around the world and in Ohio for the past several decades.

**B.     The Parties' Contractual Relationship.**

23.     Eagle Crusher enters into distribution agreements with companies who rent and sell aggregate construction equipment, such as Eagle Crusher's products, to customers.

24.     On or around June 7, 2023, the Parties entered into the Distributor Agreement, whereby US Equipment became an authorized and exclusive distributor for the sale of new and unused Eagle Crusher aggregate and recycling products, equipment, parts, and accessories within the states of Wisconsin, Minnesota, Iowa, North Dakota, South Dakota, and a large portion of Illinois.

25.     Pursuant to the Distributor Agreement, US Equipment agreed to grant a security interest in all equipment and/or parts sold by Eagle Crusher to US Equipment up to the amount of the unpaid purchase price.

26.     Section 4I of the Distributor Agreement provides that:

As security for the payment by [US Equipment] for Equipment or Parts, as applicable, [US Equipment] grants to [Eagle Crusher] a security interest in all Equipment, Parts, and other materials sold by [Eagle Crusher] to [US Equipment] up to the amount of the unpaid purchase price, and in any proceeds and accounts receivable of [US Equipment] related thereto, and [Eagle Crusher] shall have all rights of a secured party under the Uniform Commercial Code.

27.     On June 7, 2023, the same day that the Parties entered into the Distributor Agreement, the Parties also executed the First Addendum to the Distributor Agreement ("Addendum").

28.     Consistent with the Distributor Agreement, Paragraph 9 of the Addendum provides that US Equipment grants to Eagle Crusher "a security interest in the Equipment and/or Parts and replacements or substitutions . . . up to the amount of the unpaid purchase price and [Eagle Crusher] shall have all rights of a secured party under the Uniform Commercial Code. . . ."

29.     Section 4(d) of the Distributor Agreement also provides that US Equipment shall pay Eagle Crusher interest on past due accounts at a rate of one and a half percent (1.5%) for every thirty (30) day period of late payment, in addition to all court costs, reasonable attorneys' fees, and costs incurred by Eagle Crusher in collecting past due accounts.

30.     Section 1(d) of Exhibit A to the Distributor Agreement also provides that:

> [US Equipment] shall make all payments, without any setoff or deduction, on the terms stated in this Contract including interest on any balance unpaid thirty (30) days after the due date thereof at a rate of the lesser of 1.5% of every 30-day period of delinquency or the maximum rate permitted by law. [US Equipment] shall pay all reasonable attorneys' fees, court costs, and all other costs incurred by Eagle [Crusher] in collecting past due accounts, including interest on such amounts at the rate provided above.

31.     According to Section 3(a), the Distributor Agreement had a one-year term and terminated automatically on June 7, 2024:

> The term of the [Distributor Agreement] shall be a period of one (1) year commencing on the Effective Date. This [Distributor Agreement] shall terminate on the first anniversary of the Effective Date automatically and without action or notice by or to either party. Under no circumstance shall this [Distributor Agreement] carry over or be renewed or extended, and no renewal rights are granted to either party.

32.     Section 3I of the Distributor Agreement provides that:

> The obligation of [US Equipment] to pay all accounts owing to [Eagle Crusher] in accordance with [the Distributor Agreement] shall survive any termination of [the Distributor Agreement]. Interest on unpaid accounts shall accrue at a rate of one-and-a-half percent (1.5%) for every thirty-day (30) period the same remain outstanding beyond payment terms until paid in full. . . .

33.     Section 3I further states that upon request by US Equipment, Eagle Crusher will repurchase, for a purchase price equal to the net purchase price paid by US Equipment, US Equipment's inventory of Eagle Crusher equipment and parts, so long as, *inter alia*, (1) the Eagle Crusher equipment and parts are in new and unused condition and (2) US Equipment is current on all of its obligations to Eagle Crusher.

34.     According to the Distributor Agreement, the Parties further agreed that upon the termination of the Distributor Agreement, US Equipment "will immediately discontinue its use of all of [Eagle Crusher's] Trademarks on signs, stationaries, advertising, and/or any other marketing, advertising, or promotional materials that suggest that [US Equipment] is still an authorized [Eagle Crusher] distributor."

**C.     The Termination of the Distributor Agreement and US Equipment's Continued Use of Eagle Crusher's Trademarks.**

35.     The Distributor Agreement terminated on June 7, 2024, one year after the effective date of the Distributor Agreement.

36.     Pursuant to the terms of the Distributor Agreement, the Distributor Agreement could not be renewed or extended without the Parties entering into a renewal addendum or a new distributor agreement.

37.     Although the Parties discussed the possibility of entering into a new distributor agreement, Eagle Crusher rescinded its offer of a 2024-2025 dealer relationship before US Equipment attempted to accept it.  As of the date of this filing, there is no distributor agreement in effect between Eagle Crusher and US Equipment.

38.     As of the termination of the Distributor Agreement, US Equipment had in its possession one new and unused Eagle Crusher plant, the MaxRap, UNT-1793 S/N 32150 (the "MaxRap Plant").

39.     US Equipment ordered the MaxRap Plant on or about December 19, 2023.  A true and correct copy of the invoice for the MaxRap Plant is attached hereto as **Exhibit 2**.

40.     US Equipment's purchase price for the MaxRap Plant was $890,880.  US Equipment's purchase price represented a 20% discount from the retail price for the MaxRap Plant, which was $1,113,600.  *See id*.

41. The invoice date for the MaxRap Plant was March 29, 2024. *See id*.

42. US Equipment received the MaxRap Plant in or around April 2024.

43. As of date of this filing, US Equipment is in possession of the MaxRap Plant.

44. Pursuant to the invoice for the MaxRap Plant, payment terms were "net 30" from the invoice date. Accordingly, US Equipment was to pay the purchase price in full no later than April 28, 2024. *See*, **Exhibit 2**.

45. As of the date of the filing of this Complaint, and despite the terms of Exhibit 2 and receiving the MaxRap Plant eight months ago, US Equipment has not paid any amount for the MaxRap Plant.

46. Furthermore, US Equipment has in its possession miscellaneous Eagle Crusher parts ("Unpaid Parts"). A true and accurate copy of the invoices for the Unpaid Parts are attached hereto as **Exhibit 3**.

47. US Equipment received the Unpaid Parts from Eagle Crusher at various times beginning in August 2024.

48. Pursuant to the various invoices for the Unpaid Parts, payment terms were "net 30" from the invoice date.

49. Despite the terms of Exhibit 3 and receiving the Unpaid Parts, as of the date of the filing of this Complaint, US Equipment has not paid any amount for the Unpaid Parts. US Equipment owes Eagle Crusher $39,895.29 for the Unpaid Parts, with interest accruing.

50. Following the termination of the Distributor Agreement, the Parties discussed Defendant US Equipment returning the MaxRap Plant to Plaintiff Eagle Crusher.

51. On or around December 3, 2024, counsel for Eagle Crusher sent US Equipment a letter, formally notifying US Equipment that: (1) US Equipment is no longer a distributor for Eagle

Crusher; (2) pursuant to the Distributor Agreement, Eagle Crusher would like to coordinate the pickup of MaxRap Plant and will send a carrier to US Equipment's facility; (3) if US Equipment wished for Eagle Crusher to repurchase other new and unused equipment or parts, then US Equipment should provide an inventory list; and (4) US Equipment must immediately stop displaying and using Eagle Crusher trademarks in connection with US Equipment's operations. A true and accurate copy of this correspondence is attached as **Exhibit 4**.

52.  In response to Eagle Crusher's December 3, 2024, letter, US Equipment acknowledged that it is no longer a distributor for Eagle Crusher and provided a list of equipment and parts that it wished to return to Eagle Crusher. A true and accurate copy of this correspondence is attached hereto as **Exhibit 5**.

53.  Contrary to the contractual provisions governing the equipment buyback, US Equipment demanded that Eagle Crusher repurchase *used* Eagle Crusher equipment in addition to the MaxRap Plant, namely a Model 1200-25 2D crushing plant, Serial No. 32129 unit (the "Model 1200 Unit").

54.  In response, on or around December 13, 2024, Eagle Crusher's counsel notified US Equipment that Eagle Crusher would be sending a carrier during US Equipment's normal business hours on December 18, 2024, to pick up the MaxRap Plant. *See id*.  December 18 was a date that US Equipment had offered for the pickup.  *Id*.

55.  Eagle Crusher's counsel further notified US Equipment that it would not be picking up the Model 1200 Unit that US Equipment included in its inventory list because the Model 122 Unit is used rather than new and, therefore, not subject to the buyback provision under the prior Distributor Agreement. US Equipment did not agree that the Model 1200 Unit was used. *See id*.

56.     Per the Parties' correspondence, Eagle Crusher sent a representative and carrier to US Equipment's facility on December 18, 2024, to pick up the MaxRap Plant and inspect the other equipment and parts US Equipment included in its inventory list.

57.     However, when Eagle Crusher's representative and carrier arrived at US Equipment's facility, US Equipment refused to release the new MaxRap Plant unless Eagle Crusher agreed to buy back the used Model 1200 Unit.

58.     On December 19, 2024, following US Equipment's refusal to release the MaxRap Plant to Eagle Crusher, Eagle Crusher's counsel sent a letter to US Equipment notifying US Equipment that US Equipment had no legal basis for interfering with Eagle Crusher's recovery of the MaxRap Plant because US equipment had not paid for the plant. Eagle Crusher's counsel asked US Equipment to advised when US Equipment would make the MaxRap Plant available for pickup.  A true and accurate copy of this correspondence is attached hereto as **Exhibit 6**.

59.     Eagle Crusher's counsel again reminded US Equipment that Eagle Crusher was not obligated to repurchase used inventory and that US Equipment's continued representation of itself as an authorized Eagle Crusher distributor violated the Distributor Agreement. *See id*.

60.     As of the date of filing this Complaint, US Equipment wrongfully retains possession of the MaxRap Plant and has refused to return it to Eagle Crusher.

61.     As of the date of filing this Complaint, US Equipment has not paid the outstanding purchase price of $890,880.00, which was due on April 29, 2024. *See*, **Exhibit 2**.

62.     Pursuant to the agreement between the parties, overdue receivables bear interest at a rate 1.5% per month, which US Equipment has not paid on the purchase price for the MaxRap Plant.

63.     As of January 9, 2025, well past the termination of the Distributor Agreement, US Equipment publicly presents itself as an Eagle Crusher distributor US Equipment's website.  True and accurate copies of screenshots from US Equipment's website depicting Eagle Crusher's name and logo appear below:



64.     As of December 27, 2024, well past the termination of the Distributor Agreement, US Equipment publicly presents itself as an Eagle Crusher distributor in US Equipment's e-mail communications.   A true and accurate copy of a screenshot of US Equipment's email footer depicting Eagle Crusher's name and logo appears below:



Best regards,
Kevin Kiesgen

Kevin Kiesgen
General Manager

P: (414)313-4245
O: (630) 296-1999
E: kevink@usequipsales.com
A: 13011 Grant Rd, Lemont, IL
W: www.usequipsales.com

65.     As of January 9, 2025, well past the termination of the Distributor Agreement, US

Equipment publicly presents itself as an Eagle Crusher distributor on US Equipment's Instagram

profile.  A true and accurate copy of a screenshot of US Equipment's Instagram page featuring

Eagle Crusher in its highlights appears below:



66. Customers are likely to be, and likely have been, confused as to whether US Equipment is a distributor or is somehow otherwise affiliated with Eagle Crusher based on US Equipment's representations on its website and in its e-mail communications.

67. US Equipment's unauthorized uses of Eagle Crusher's trademarks have caused and are causing Eagle Crusher to suffer irreparable harm, including loss of goodwill and loss of brand control.

## COUNT I
## Breach of Contract – Failure To Pay For Parts And Equipment

68. Eagle Crusher incorporates all preceding paragraphs as if fully restated here.

69. The Distributor Agreement is a binding and enforceable contract under Ohio law.

70. Eagle Crusher performed its obligations under the Distributor Agreement.

71. In exchange for Eagle Crusher providing its equipment and parts to US Equipment, US Equipment was responsible for paying the purchase price for each such product.

72. Section 3I also provides that "[i]nterest on unpaid accounts shall accrue at a rate of one-and-a-half percent (1.5%) for every thirty-day (30) period the same remain outstanding beyond payment terms until paid in full. . . ."

73. Section 3I of the Distributor Agreement provides that US Equipment's obligations to pay outstanding accounts survive the termination of the Distributor Agreement.

74. Section 1(d) of Exhibit A to the Distributor Agreement also provides that "[US Equipment] shall make all payments, without any setoff or deduction, on the terms stated in this Contract including interest on any balance unpaid thirty (30) days after the due date thereof at a rate of the lesser of 1.5% of every 30-day period of delinquency or the maximum rate permitted by law. [US Equipment] shall pay all reasonable attorneys' fees, court costs, and all other costs

incurred by Eagle [Crusher] in collecting past due accounts, including interest on such amounts at the rate provided above."

75.     US Equipment purchased the MaxRap Plant from Eagle Crushers at a discounted price of $890,880.  US Equipment was to pay said purchase price in full no later than April 29, 2024.

76.     Eagle Crushers provided to MaxRap Plant to US Equipment on or around March 29, 2024.

77.     To date, US Equipment has failed to remit any payments for the MaxRap Plant to Eagle Crushers.

78.     US Equipment breached the Distributor Agreement by unreasonably and wrongfully failing and refusing to pay Eagle Crusher the discounted purchase price for the MaxRap Plant, $890,880.

79.     US Equipment purchased the Unpaid Parts from Eagle Crushers at various times throughout 2024.

80.     Eagle Crushers provided the Unpaid Parts to US Equipment at various times throughout 2024.

81.     To date, US Equipment has failed to remit any payments for the Unpaid Parts to Eagle Crusher.

82.     US Equipment breached the Distributor Agreement by unreasonably and wrongfully failing and refusing to pay Eagle Crusher the discounted purchase price for the Unpaid Parts, at $39,895.29, with interest accruing.

83.    As a result of this breach, Eagle Crusher has been damaged and continues to be damaged in the amount of $890,880 for the MaxRap Plant and $39,895.29 for the Unpaid Parts , in addition to the 1.5% per thirty-day period following the non-payment to Eagle Crusher.

84.    As of the filing of this Complaint, the accrued and unpaid interest on the purchase price of the MaxRap Plant is $112,689.72.

85.    As of the filing of this Complaint, the accrued and unpaid interest on the purchase price of the Unpaid Parts is $475.22.

### COUNT II
### Breach of Contract – Continued Use of Eagle Crusher's Trademarks

86.    Eagle Crusher incorporates all preceding paragraphs as if fully restated here.

87.    Upon termination of the Distributor Agreement, Section 3(f) of the Distributor Agreement requires US Equipment to "immediately discontinue its use of all of [Eagle Crusher's] Trademarks on signs, stationaries, advertising, and/or any other marketing, advertising, or promotional materials that suggest that [US Equipment] is still an authorized [Eagle Crusher] distributor."

88.    The Distributor Agreement terminated by its own terms, and no longer effective, as of June 7, 2024.

89.    As of the date of filing, US Equipment continues to use and display Eagle Crusher's trademarks to the public, suggesting that US Equipment is still an authorized Eagle Crusher distributor.

90.    US Equipment breached the Distributor Agreement by continuing to use and display Eagle Crusher's trademarks on US Equipment's website and in signature blocks on e-mail communications, and elsewhere on information and belief, suggesting that US Equipment is still an authorized Eagle Crushed distributor.

91.     As a result of this breach of the Distributor Agreement, Eagle Crusher has been damaged and continues to be damaged in an amount to be determined at trial.

## COUNT III
## Unjust Enrichment

92.     Eagle Crusher incorporates all preceding paragraphs as if fully restated here.

93.     US Equipment received a benefit from Eagle Crusher through US Equipment's continued retention, promotion, and advertisement of Eagle Crusher's MaxRap Plant and Unpaid Parts.

94.     US Equipment continues to receive a benefit from Eagle Crusher through US Equipment's continued retention, promotion, and advertisement of Eagle Crusher's MaxRap Plant and Unpaid Parts.

95.     To date, US Equipment has failed to compensate Eagle Crusher in any way for the MaxRap Plant and Unpaid Parts, including, but not limited to, by failing to pay the purchase price for the MaxRap Plant and Unpaid Parts and the accrued interest thereon.

96.     US Equipment has retained the benefit that it received from Eagle Crusher, and it would be unjust to allow US Equipment to retain said benefit without compensation to Eagle Crusher.

97.     Eagle Crusher has suffered, and continues to suffer, damages as a direct and proximate result of US Equipment's unjust retention of these benefits.

## COUNT IV
## Replevin

98.     Eagle Crusher incorporates all preceding paragraphs as if fully restated here.

99.     As set forth in Section 4I of the Distributor Agreement, Eagle Crusher owns a security interest under the Uniform Commercial Code in any equipment or part sold by Eagle Crusher to US Equipment up to the amount of the unpaid purchase price.

100. Eagle Crusher holds a valid, perfected security interest in the MaxRap Plant and Unpaid Parts, which it sold to US Equipment, who has not made a single payment toward the purchase prices.

101. As a result of US Equipment's breach of the Distributor Agreement and failure to pay the purchase prices for the MaxRap Plant and Unpaid Parts, Eagle Crusher is entitled to permanent possession, custody, and control of the MaxRap Plant and Unpaid Parts pursuant to the Distributor Agreement.

102. US Equipment has possession, custody, and/or control of the MaxRap Plant and Unpaid Parts.

103. US Equipment no longer has the right to possess the MaxRap Plant and Unpaid Parts and therefore, possession, custody, and/or control of the MaxRap Plant and Unpaid Parts by US Equipment is wrongful.

104. Eagle Crusher has made a demand on US Equipment for the possession of the MaxRap Plant and Unpaid Parts.

105. US Equipment has failed and refused to surrender possession of the MaxRap Plant and Unpaid Parts.

106. To the best of Eagle Crusher's knowledge, and upon information and belief, the MaxRap Plant and Unpaid Parts are located at US Equipment's facility.

107. Eagle Crusher is and continues to be damaged by US Equipment's wrongful possession of the MaxRap Plant and Unpaid Parts, which are subject to depreciation and potential damage.

108.     Upon information and belief, the MaxRap Plant and Unpaid Parts have not been taken for a tax, assessment, or fine pursuant to statute, or seized under execution of judgment against the property of US Equipment.

109.     Under the provisions of Fed. R. Civ. P. 64 and Ohio Rev. Code § 2737 *et seq.*, Eagle Crusher is entitled to a permanent order of possession, custody, and control of the MaxRap Plant and Unpaid Parts.

### COUNT V
### Trademark Infringement
### (15 U.S.C. § 1114)

110.     Eagle Crusher incorporates all preceding paragraphs as if fully restated here.

111.     US Equipment's use of the EAGLE CRUSHER Registration as alleged herein is likely to cause confusion, to cause mistake, or to deceive customers as to the source of US Equipment's products and its alleged affiliation with Eagle Crusher.

112.     US Equipment's aforementioned acts constitute infringement of Eagle Crusher's registered trademark in violation of the trademark laws of the United States, including 15 U.S.C. § 1114.

113.     The foregoing acts of infringement have been and continue to be deliberate, willful, and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

114.     As a result of the aforesaid acts by US Equipment, Eagle Crusher has been severely injured in its business and property.  Eagle Crusher has suffered damages, including loss of goodwill and reputational loss, in an amount to be determined at trial.

115.     Upon information and belief, US Equipment has generated revenues and profits as a result of its aforesaid acts.

116.     The injury to Eagle Crusher is and continues to be irreparable.

117.    An award of monetary damages alone cannot fully compensate Eagle Crusher for its injuries and Eagle Crusher lacks an adequate remedy at law.

## COUNT VI
### Unfair Competition
### (15 U.S.C. § 1125(a))

118.    Eagle Crusher incorporates all preceding paragraphs as if fully restated here.

119.    US Equipment's use of Eagle Crusher's name and logo as alleged herein constitutes unfair competition, false representation, and false designation of origin upon and in connection with US Equipment's goods and services, and thus violates 15 U.S.C. § 1125(a).

120.    Specifically, US Equipment advertised and offered products and services using—and continues to advertise and offer products and services using—Eagle Crusher's trademarks.

121.    US Equipment advertised and offered services under "Eagle Crusher" and the Eagle Crusher logo so as to trade upon the goodwill Eagle Crusher has developed in its trademarks.

122.    US Equipment has falsely suggested an association, affiliation, or sponsorship with, or approval by, Eagle Crusher so as to cause, or to be likely to cause, confusion or mistake, or to deceive consumers, as to origin of US Equipment's goods and services. Such use constitutes an effort to pass off US Equipment's goods and services as originating from, or being approved by or affiliated with, Eagle Crusher, all for the purpose of benefitting US Equipment based on the goodwill associated with Eagle Crusher's trademarks.

123.    US Equipment's conduct has been willful and carried out in bad faith, as US Equipment was well aware of Eagle Crusher's trademarks yet has continued to use such trademarks despite no longer being authorized to do so and despite written demands to discontinue all such uses.

124.    Upon information and belief, US Equipment has generated revenues and profits as a result of its aforesaid unfair and deceptive acts.

125.    As a result of the aforesaid unfair and deceptive acts by US Equipment, Eagle Crusher has been severely injured in its business and property.

126.    The injury to Eagle Crusher is and continues to be irreparable. An award of monetary damages alone cannot fully compensate Eagle Crusher for its injuries and Eagle Crusher lacks an adequate remedy at law.

**COUNT VII**
**Deceptive Trade Practices**
**Ohio Revised Code § 4165.01 *et seq*.**

127.    Eagle Crusher incorporates all preceding paragraphs as if fully restated here.

128.    By using Eagle Crusher's trademarks in commerce in connection with US Equipment's products and services, US Equipment has passed its products and services off as those of Eagle Crusher.

129.    By using Eagle Crusher's trademarks in commerce in connection with US Equipment's products and services, US Equipment has created a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of US Equipment's products and services.

130.    By using Eagle Crusher's trademarks in commerce in connection with US Equipment's products and services, US Equipment has created a likelihood of confusion or misunderstanding as to the affiliation, connection, or association with, or certification of, US Equipment's services by Eagle Crusher.

131.    By using Eagle Crusher's trademarks in commerce in connection with US Equipment's products and services, US Equipment has represented that its services have sponsorship, approval, characteristics, or benefits that it does not have.

132. US Equipment's wrongful conduct is in violation of Ohio's Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01 *et seq*.

133. US Equipment's wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Eagle Crusher.

134. Eagle Crusher has no adequate remedy at law and is entitled to an injunction prohibiting US Equipment from using its trademarks, pursuant to Ohio Rev. Code § 4165.03.

135. As a direct and proximate result of US Equipment's trademark infringement, Eagle Crusher has been damaged in an amount to be proved at trial.

<u>**COUNT VIII**</u>
<u>**Unfair Competition Under Ohio Common Law**</u>

136. Eagle Crusher incorporates all preceding paragraphs as if fully restated here.

137. Upon information and belief, US Equipment will, for the indefinite future, continue to use Eagle Crusher's trademarks and other confusingly similar designations in a manner that is likely to mislead ordinary customers including by leading them falsely to believe that US Equipment is affiliated, as a distributor or otherwise, with Eagle Crusher when it is not.

138. Despite numerous requests and the termination of its dealer relationship with Eagle Crusher, US Equipment has not ceased its activities that falsely suggest that US Equipment is affiliated with Eagle Crusher, its US Equipment's use of Eagle Crusher's trademarks.

139. US Equipment's wrongful conduct alleged herein has proximately caused, and will continue to cause, Eagle Crusher substantial injury, including damage to its goodwill, confusion of potential customers, injury to Eagle Crusher's reputation, and diminution of value of Eagle Crusher's intellectual property.

140.     US Equipment's wrongful conduct alleged herein constitutes unfair and unlawful practices in violation of the common law of the State of Ohio to the injury of Eagle Crusher and the public.

141.     US Equipment's wrongful conduct, unless restrained, will cause great and irreparable injury to Eagle Crusher.

142.     An award of monetary damages alone cannot fully compensate Eagle Crusher for its injuries and Eagle Crusher lacks an adequate remedy at law.

**COUNT IX**
**Violation of the Illinois Uniform Deceptive Trade Practices Act**
**(815 ILCS 510/2)**

143.     Eagle Crusher incorporates all preceding paragraphs as if fully restated here.

144.     Through the acts set forth herein, US Equipment has engaged in deceptive trade practices under applicable Illinois law by, among other things, (i) causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of US Equipment's products and services; (ii) causing a likelihood of confusion or misunderstanding as to the affiliation, connection, or association of US Equipment or US Equipment's products and services with Eagle Crusher or Eagle Crusher's products and services; and (iii) engaging in other conduct which similarly creates a likelihood of confusion or of misunderstanding in the eyes of the public under 815 ILCS 510/2(2)-(3).

145.     US Equipment's deceptive trade practices are causing and are likely to cause substantial injury to the public and to Eagle Crusher.

146.     US Equipment's aforementioned unfair, abusive, and/or deceptive acts, omissions, and/or practices were made in the course of US Equipment's business, vocation, or occupation within the meaning of 815 ILCS 510/2.

147.     US Equipment's aforementioned unfair, abusive, and/or deceptive acts, omissions, and/or practices were willful.

148.     Upon information and belief, US Equipment has generated revenues and profits as a result of its aforesaid acts.

149.     Upon information and belief, US Equipment's conduct has also significantly impacted the public, including actual and prospective consumers of Eagle Crusher.

150.     Eagle Crusher has suffered and continues to suffer irreparable harm as a result of US Equipment's infringing conduct, and permanent injunction is necessary to prevent confusion or misunderstanding as to source going forward.

**COUNT X**
**Unfair Competition**
**(Illinois Common Law)**

151.     Eagle Crusher incorporates all preceding paragraphs as if fully restated here.

152.     US Equipment's conduct has caused and is likely to cause confusion, mistake, or deception as to the source or origin of US Equipment's products and services, or the affiliation, sponsorship, or other relationship between the Parties in violation of Illinois common law.

153.     US Equipment's conduct was willful and carried out in bad faith.

154.     US Equipment's conduct constitutes unfair competition in that US Equipment's attempted to trade or otherwise conduct business on the reputation and goodwill that Eagle Crusher has developed in its trademarks.

155.     Upon information and belief, US Equipment has generated revenues and profits as a result of its aforementioned acts.

156.     US Equipment's conduct has caused Eagle Crusher to suffer damages, including lost profits, in an amount to be determined at trial.

157.     US Equipment's conduct has caused Eagle Crusher irreparable harm and injury and will continue to do so unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Eagle Crusher demands judgment in its favor on all Counts and prays for an award of damages against US Equipment, including, at a minimum, the following relief:

1.     Compensatory damages equal to the amount of the purchase price of MaxRap Plant, plus the applicable interest thereon, which amounts are currently $1,003,569.70;

2.     Compensatory damages equal to the amount of the purchase price of Unpaid Parts, plus the applicable interest thereon, which amounts are currently $40,370.51;

3.     US Equipment, and its officers, directors, agents, representatives, and all persons acting or claiming to act on its behalf or under its direction or authority be permanently enjoined from using any of Eagle Crusher's trademarks in connection with the sale, offering for sale, advertisement, or promotion of goods or services related to the goods or services offered by Eagle Crusher;

4.     US Equipment, and its officers, directors, agents, representatives, and all persons acting or claiming to act on its behalf or under its direction or authority be permanently enjoined from representing in any manner or by any method or implication whatsoever that any business conducted by US Equipment is connected, affiliated, or otherwise associated with Eagle Crusher, or from taking any action that is likely to cause confusion, mistake, or deception on the part of the public as to the connection, affiliation, or other association of US Equipment's business with Eagle Crusher;

5.     Eagle Crusher be awarded all the profits US Equipment gained, and all the profits that Eagle Crusher lost, as a result of US Equipment's unfair competition and unauthorized use of Eagle Crusher's trademarks;

6.     Eagle Crusher be awarded damages for injury to its business reputation and the loss of its goodwill as a result of US Equipment's offer to sell, and sales of, goods and services that US Equipment misrepresented or implied came from or were approved by Eagle Crusher;

7.     Pursuant to 15 U.S.C. § 1117(b), that Eagle Crusher recover an amount equal to three times US Equipment's profits or Eagle Crusher's damages, whichever amount is greater, together with reasonable attorneys' fees because US Equipment's willfully unfair competition and intentional use of Eagle Crusher's trademarks without authorization;

8.     A finding that US Equipment's conduct alleged herein was exceptional under 15 U.S.C. § 1117(a).

9.     Eagle Crusher be awarded its reasonable attorneys' fees and costs as provided by the Distributor Agreement, and as may be recoverable under 15 U.S.C. § 1117(a) and/or at common law;

10.    Eagle Crusher be awarded pre- and post-judgment interest, as may be recoverable under statute and/or at common law; and

11.     Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*s/ T. Earl LeVere*
T. Earl LeVere, Trial Attorney (0063515)
Kishala Srivastava (0098807)
ICE MILLER LLP
250 West Street, Suite 700
Columbus, OH 43215
P: (614) 462-1095
F: (614) 462-5135
Earl.Levere@icemiller.com
Kishala.Srivastava@icemiller.com

**Counsel to Plaintiff Eagle Crusher Company, Inc.**

## DEMAND FOR JURY TRIAL

Plaintiff Eagle Crusher Company, Inc. requests a trial by jury on all issues so triable.

Respectfully submitted,

*s/ T. Earl LeVere*
T. Earl LeVere, Trial Attorney